E-FILED
Monday, 13 July, 2020  06:06:07 PM
Clerk, U.S. District Court, ILCD

**IN THE UNITED STATE DISTRICT COURT**
**CENTRAL DISTRICT OF ILLINOIS**
**URBANA DIVISION**

| | |
|---|---|
| DAVID COOK, M.D., | |
| Plaintiff, | |
| v. | Case No:  19-cv-02119-JES-EIL |
| UNITED STATES DEPARTMENT OF VETERANS AFFAIRS, and ROBERT WILKIE, the Secretary of the United States Department of Veterans Affairs, | |
| Defendants. | |

**PLAINTIFF'S REPLY BRIEF IN SUPPORT OF**
**COMPLAINT FOR JUDICIAL REVIEW**

Plaintiff, David Cook, M.D. ("Dr. Cook"), by his attorneys, Goldberg Law Group, LLC, files this Reply Brief in Support of Complaint for Judicial Review against the United States Department of Veteran Affairs and its Secretary, Robert Wilkie (collectively, the "Defendants").

**INTRODUCTION**

Dr. Cook contests the decision of the Departmental Appeals Board ("DAB") to uphold the revocation of his clinical privileges and removal from employment by the Veterans Administration ("VA") Illiana Healthcare System located in Decatur, Illinois after he engaged in a brief personal relationship with a woman, who, unbeknownst to him at the time, was a patient of the Decatur Community Based Outpatient Clinic ("the Decatur Clinic") and assigned to his panel. The decision of the DAB must be reserved because: (1) Dr. Cook was denied due process during the DAB hearing; (2) the decision is unsupported by substantial evidence; and (3) removal from federal employment and revocation of privileges is an overly harsh punishment.

<u>**ARGUMENT**</u>

**I.    STANDARD OF REVIEW**

Courts must review agency decisions to determine whether they are arbitrary, capricious, an abuse of discretion or otherwise not in accordance with the law; obtained with procedures required by law, rule or regulation; and supported by substantial evidence. 38 U.S.C. § 7462(f)(2). Reversal is appropriate if any one of those standards have not been met. Defendants' contend that "reversal is appropriate only where the administrative action is irrational or represents a clear error in judgment." (Dkt. No. 13 at 12, citing *Indiana Forest Alliance v. U.S. Forest Service*, 325 F.3d 851, 859 (7th Cir. 2003)). However, the standard is not whether the decision was "irrational" but "'whether the decision was based on a consideration of the relevant factors and whether there has been clear error of judgment.'" *Id*. In addition, the court in *Indiana Forest* stated, "[w]e must satisfy ourselves that the agency 'examine[d] the relevant data and articulate[d] a satisfactory explanation for its action including a "rational connection between the facts found and the choice made."'" *Id*. quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co*., 463 U.S. 29, 43 (1983).

**II.   THE DECISION OF THE DAB MUST BE REVERSED BECAUSE DR. COOK WAS DENIED DUE PROCESS THROUGH THE INTRODUCTION OF HEARSAY STATEMENTS, NOT SUBJECT TO CROSS-EXAMINATION.**

Dr. Cook's due process rights were violated when the DAB improperly allowed the introduction of unreliable hearsay statements from Patient A and Elizabeth McGarry ("McGarry"), a social worker, and Dr. Cook was unable to cross-examine either Patient A or McGarry at the hearing. Defendants argue that Dr. Cook admitted to the same facts that the hearsay witness (Patient A) would have established and therefore, there is no harm to Dr. Cook from the introduction or consideration of those statements. (Dkt. No. 13 at 13). In support, Defendants cite

to *Otto v. S.E.C.*, a case that did not involve a federal agency or administrative review under the APA. *Otto v. S.E.C.*, 253 F. 3d 960, 966 (7th Cir. 2001). The National Association of Security Dealers, Inc. ("NASD") discussed in *Otto* is a private "registered association of securities broker-dealers registered with the SEC" created specifically because "the SEC lacks the resources to police the entire securities industry, [and therefore] relies on participants in the markets to govern themselves." *Id*. at 964. Such an organization cannot be compared to a federal agency such as the DAB which "provides impartial, independent review of disputed decisions under more than 60 statutory provisions" ranging from Medicare to Veteran's Affairs and whose decisions are subject to review under the Administrative Procedure Act or 38 U.S.C. § 7462(f)(2). *See* https://www.hhs.gov/about/agencies/dab/index.html (last accessed July 9, 2020). Therefore, the Defendants' reliance on *Otto* is misplaced and improper. There is no indication that the standards set forth in that case apply to judicial review of a federal agency action.

Defendants argue that Dr. Cook "admitted to all major facts" and therefore, reliability of Patient A's hearsay testimony is somehow established. (Dkt. No. 13 at 15). However, that is not the standard for determining whether hearsay statements constitute substantial evidence. "[T]o constitute substantial evidence, hearsay declarations, like any other evidence, must meet minimum criteria for admissibility it must have probative value and bear indicia of reliability." *Calhoun v. Bailar*, 626 F.2d 145, 149 (9th Cir. 1980). At no time did Dr. Cook did admit to Patient A's version of events. The record reflects numerous discrepancies in her version of events, and the evidence produced by Dr. Cook indisputably refutes those statements. (42; 76; 481; 501-504; 8). As outlined in Dr. Cook's Brief, at least the following discrepancies exist between Patient A's version of events and Dr. Cook's:

- <u>Date of the first meeting</u>: According to Theresa Seymour ("Seymour")'s report, "Patient stated she first saw Dr. Cook on September 13, 2017 at Decatur. About a week later she received a message from a dating site to meet up with a potential partner. When she went to meet him it was Dr. Cook." (115). According to McGarry's report, "She had been to see Dr. Cook for a yearly exam. A couple of days later she received contact from him through a dating app called Plenty of Fish." (118). However, in her YouTube video, Patient A stated, "I started dating and I think I was on match and I got a message from a guy who was 50…. And then I look at his face and I realize it's my doctor. My doctor…that I hadn't seen since the last time he gave me a pap smear and a breast exam…But we talked a little bit and he's like well, I see you have a doctor's visit coming up here soon and I was like oh yeah it's in a week." (966-970). Dr. Cook testified that his first personal contact with the patient was through Match.com on September 11, 2017. (42).

- <u>Time period between first online contact and first date</u>: According to McGarry's report, "They began talking and the following weekend they went on a date…So there was a little bit of discrepancy on her part exactly when that, when they had her initial appointment and then when they started talking thereafter…They talked for about a week and then they went on the date that weekend…" (118). According to Seymour's AIB interview, "…she said that they had met a week after she had saw him in September as a doctor/patient relationship." (90). Yet, Dr. Cook testified that they went on their date on September 11 or 12, 2017, before her appointment on September 13, 2017. (508).

- <u>Location of their first date</u>: According to Patient A, they met first at a park and then went to Dr. Cook's house. (115). In other accounts, Patient A reports that she went straight to Dr. Cook's house. (968-969). In contrast, Dr. Cook testified that they met near her house and then went to her house. (501).

Patient A's version of the events were designed to make Dr. Cook appear like he initiated a relationship with Patient A knowing she was a patient, which was directly conflicted by Cook's testimony, and therefore, Dr. Cook's statements do not constitute admissions which make Patient A's hearsay testimony somehow reliable. This hearsay testimony was not only improperly admitted but should not have been considered due to its inconsistency. Additionally, the Defendants wholly ignore the issue of McGarry's hearsay testimony, whose reports and AIB interview transcript were admitted despite the fact that she was not present to testify at the DAB hearing and was not subject to cross-examination. (333).

Further, the Defendants describe facts that are not in the record. The Defendants' claim that "Patient A was placed under greater psychological strain as a result of her encounter with Dr. Cook and even if Dr. Cook initially was not at fault, Dr. Cook took no action to protect Patient A." (Dkt. No. 13 at 16). The Defendants do not cite to any page of the administrative record which establish the alleged "psychological strain" on Patient A, and furthermore, the argument that Dr. Cook took no action to protect Patient A is not of relevance to the issue of Dr. Cook's denial of due process. Instead of responding to the fact that significant hearsay testimony was improperly admitted throughout the DAB hearing, the Defendants' focus on creating new facts and assigning new blame to Dr. Cook.

Dr. Cook was not afforded due process where he was unable to cross-examine numerous hearsay statements admitted during the hearing, and relied upon by the DAB to affirm his removal from federal employment and revocation of clinical privileges.

### III.   THE DAB'S FINDINGS ARE NOT SUPPORTED BY SUBSTANTIAL EVIDENCE.

MCM 05-07 Employee Conduct and Ethical Standards policy states, at Part III, section A, paragraph 3, "The employee will not initiate or participate in any relationship with patients which could be harmful to the therapeutic environment for the specific patient…" (762). Although the Defendants contend that Dr. Cook participated in a personal relationship with Patient A, the evidence reflects that Dr. Cook did not do so knowingly. (483; 957). In fact, Dr. Cook was not aware that Patient A was a patient until after they had been intimate and Patient A informed him that she was assigned to his patient panel. (25; 487-493). After Patient A identified herself as a patient, Dr. Cook had no further sexual contact with the patient and took steps to immediately end their relationship in a thoughtful manner. (45-46; 488, 491). The DAB's finding against Dr. Cook for violation of MCM 05-07 is not supported by substantial evidence where Dr. Cook did not initiate the relationship with Patient A, and he terminated their personal relationship soon after he discovered the existing doctor-patient relationship, and  thus, must be reversed.

The second charge against Dr. Cook that he failed to safeguard Patient A's PHI from unauthorized disclosure through use of encryption software when Patient A communicated with Dr. Cook via Facebook messenger is also unsupported. (307). Dr. Cook did not initiate communications with Patient A via Facebook messenger, and he did not *disclosed*any PHI through Facebook messenger. *See* VA Handbook 6500, Information Security Program, Appendix D, Paragraph 2, Subparagraph b.13 ("I will protect VA sensitive information from unauthorized disclosure, use, modification or destruction…") (30). As noted in the Defendants' Response, Dr.

Cook testified that no PHI was exchanged via Facebook. In fact, it was Patient A that first initiated contact with Dr. Cook through Facebook messenger, and when she did so, Dr. Cook advised her to communicate with him via MyHealthVet or to call the clinic directly regarding refills. (491). By initiating contact through Facebook messenger, Patient A, in essence, consented to communication via a non-secure channel. At no time did Dr. Cook use Facebook messenger to initiate contact, or disclose or exchange sensitive PHI.

## IV.    THE ACTION IS OVERLY HARSH AND EXCESSIVE IN LIGHT OF THE EVIDENCE AND MITIGATING FACTORS.

The DAB's decision to uphold the revocation of Dr. Cook's clinical privileges and his removal from federal employment was an abuse of discretion. Defendants contend that there is no requirement for the DAB to address each of the twelve *Douglas* factors. (Dkt. No. 13 at #17); *see Douglas v. Veterans Admin.*, 5 MSPB 313, 5 MSPR 280 (1981). While it is true that not all twelve factors may be relevant in every case, here, the DAB's decision is devoid of *any* discussion of *any* of the twelve *Douglas* factors. While previous discipline and current allegations are to be considered, mitigating evidence is also to be considered in determining the appropriate disciplinary action. Additionally, the VA Handbook 5021, Part II, Appendix A requires that the DAB consider specific mitigating and aggravating factors *before* imposing discipline. *See* https://www.va.gov/vapubs/search_action.cfm?dType=2 (last accessed July 13, 2020).[1] There is absolutely no evidence in the record that the DAB considered any of the mitigating and aggravating factors as required under VA Handbook 5021/25 Appendix A.

The DAB also failed to consider any mitigating factors, such as the fact that there was no evidence that Dr. Cook knowingly or intentionally contacted Patient A to start a personal or sexual

---

[1] Appendix A actually contains a form outlining the aggravating and mitigating factors that is to be completed by the VA upon imposition of discipline.

relationship with knowledge that she was a patient; that as soon as Dr. Cook became aware that Patient A was a patient, he immediately terminated any further sexual relationship and shortly thereafter, any personal relationship with her; and that there have never been similar allegations made against Dr. Cook during his employment with the VA. Significantly, both prior disciplinary actions against Dr. Cook were minor and administrative in nature for not timely completing documentation – neither of them pertained to any professional misconduct.

Moreover, Dr. Cook was candid and remorseful in his testimony before the DAB. The Defendants misstate facts in the record, claiming "According to [Dr. Cook], it was the patient's responsibility to make certain she was moved to another physician." (Dkt. No. 13 at 18). The Defendants' fail to cite to the record to support this contention. In actuality, the record reflects that Dr. Cook testified that he should have proactively requested that Patient A be reassigned to another provider after their encounter on September 11, 2017. (493-495). The record reflects Dr. Cook's potential for rehabilitation is strong, and possibility of re-offense low as Dr. Cook has no prior history of boundary violations or other unprofessional or unethical behavior during his tenure at the VA. In fact, Dr. Cook's testimony clearly demonstrates an acceptance of responsibility, remorse for his actions, and the unlikelihood of such conduct ever occurring again the future.

Based on an appropriate weighing of the *Douglas* factors, the DAB's decision to revoke Dr. Cook's clinical privileges and remove him from federal employment is not only overly harsh and excessive, but arbitrary and capricious where a rational connection between the facts and the decision cannot be made. Therefore, it must be reversed.

## **CONCLUSION**

8

For the reasons set forth above and in his Brief in Support of Complaint for Judicial Review, Dr. Cook respectfully prays that the Court award him the relief set forth in his Complaint for Judicial Review and for any further relief this Court deems appropriate.

Dated: July 13, 2020

<div style="margin-left: 40%;">

Respectfully Submitted,
DAVID COOK, M.D.


By:___*/s/ Jenna E. Milaeger*_____
        One of His Attorneys

</div>

Jenna E. Milaeger
Michael K. Goldberg
Robert A. Bauerschmidt
Goldberg Law Group, LLC
120 South Riverside Plaza, Suite 1675
Chicago, Illinois 60606
Tel.: (312) 930-5600
Fax: (312) 930-0944
mgoldberg@goldberglawoffice.com
jmilaeger@goldberglawoffice.com
bbauerschmidt@goldberglawoffice.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 13, 2020, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System, and I hereby certify that a copy of the foregoing document was served by electronic mail, on July 13, 2020, to all counsel of record.

<div style="text-align:right">

*/s/ Jenna E. Milaeger*
One of Plaintiff's Attorneys

</div>

GOLDBERG LAW GROUP, LLC
120 S. Riverside Plaza, Suite 1675
Chicago, IL 60606
Tel.: (312) 930-5600
Fax: (312) 930-0944
jmilaeger@goldberglawoffice.com