UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
Urbana Division

| | |
|---|---|
| **DAVID COOK, M.D.,** | |
| **Plaintiffs,** | |
| v. | Case No. 19-2119 |
| **UNITED STATES DEPARTMENT OF VETERAN AFFAIRS, AND ROBERT WILKIE, SECRETARY OF THE UNITED STATES DEPARTMENT OF VETERAN AFFAIRS,** | |
| **Defendants.** | |

REPORT & RECOMMENDATION

Plaintiff David Cook ("Cook") seeks review against the United States Department of Veteran Affairs ("VA") and Secretary Wilkie under 38 U.S.C. § 7462(f) and 5 U.S.C. § 706. Cook filed a Brief in Support of Complaint for Judicial Review (#15) seeking reversal of the Disciplinary Appeals Board's ("DAB") decision to remove Dr. Cook from federal employment. The VA filed a Response arguing the DAB's decision should be affirmed. Dr. Cook filed a Reply Brief (#21) in support of his Brief. For the reasons explained below, the Court recommends that the decision to remove Dr. Cook from federal employment be affirmed and judgment be entered in favor of Defendants.

    I.    **Background**

Cook began working as a physician at the VA's clinic in 2014. In January 2017, Cook saw a female veteran ("Patient A") for a scheduled appointment. (VA Brief #20, p. 1); (Cook Br. #15, p. 2). On September 11, 2017, Patient A and Cook were paired on the dating website Match.com. (VA Brief #20, p. 4); (Cook Br. #15, p. 9). Cook and Patient A met in-person and had sexual intercourse on September 11, 2017, or September 12, 2017. (R. 507.); (VA Brief #20, p. 9); (Cook Br. #15, p. 12). Cook treated Patient A during a

scheduled appointment at the VA on September 13, 2017.[1] (VA Br. #20, p. 9); (Cook Br. #15, p. 3). Cook and Patient A interacted socially until Cook ended their relationship on September 23, 2017.[2] (Cook Br. #15, p. 3); (VA Br. #20, p. 10).

In January and February of 2018, Patient A contacted Cook via Facebook about refilling her prescriptions and various ailments that she was experiencing. (VA Br. #20, p. 2); (Cook Br. #15, p. 3). Cook responded to these inquires and arranged to have Patient A's prescriptions refilled, and Cook offered medical advice for the other ailments.[3] (Cook Br. #15, p. 3); (VA Br. #20, p. 2). Patient A was the only patient with whom Cook communicated through Facebook to craft therapeutic plans. (VA Br. #20, p. 5); (R. 64.) Cook did not notify the VA about his relationship with Patient A. (VA Br. #20, p. 2); (R. 69.)

In September 2018, Patient A came to the clinic for another appointment with Cook. (VA Br. #20, p. 2). Patient A was distressed about seeing Cook as a treating physician after their non-clinical interactions, and she contacted a social worker to express her distress. Patient A also posted a video on YouTube stating that a VA physician had seen her socially, and Patient A asserted that Cook took advantage of her. (VA Brief #20, p. 2). In response, the VA launched an investigation against Cook. (VA Brief #20, p. 2).

On September 20, 2018, at approximately 1:00 PM, Cook was notified that he was going to be placed on paid leave while an investigation was conducted. Later that same day at approximately 7:56 PM, Cook called Patient A and left her a recorded voice message. Additionally, Cook messaged Patient A on Facebook, and Cook wrote: "I don't know if you realize how thoroughly and completely what you're doing is absolutely

---

[1] Cook testified that Patient A notified Cook that she was his patient *before* her appointment on September 13, 2017. (R. 493.)
[2] Cook did not have intercourse with Patient A after September 11, 2017 or September 12, 2017. (R. 621.) However, Cook did continue to meet with Patient A three or four times, from September 11, 2017 until September 23, 2017. (R. 621.); (R. 672.) After, their initial sexual encounter Cook continued to give Patient A shoulder rubs and Patient A would go to Cook's house and participate in his hobbies, such as glasswork. (R. 622.); (R. 504.)
[3] These Facebook messages included Patient A's first name, her picture, her ailments, and her medications. (R. 521.); (R. 62.)

2

destroying my life." (R. 306.) On September 21, 2018, Cook was instructed by the VA to not contact his patients during the investigation. (R. 253.)

After the investigation, Cook was removed from duty and terminated from his position. Cook appealed the removal. The Disciplinary Appeals Board ("DAB") reviewed the Administrative Investigative Board's ("AIB") findings and affirmed the removal. (R. 303.); (R. 304-310.)

## II.   Standard of Review

The federal district court has jurisdiction over the DAB's disciplinary decision pursuant to 5 U.S.C. § 706 and 38 U.S.C. § 7462(f)(2). The statute states:

> The reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (B) contrary to constitutional right, power, privilege, or immunity; . . . (E) unsupported by substantial evidence[.]

5 U.S.C. § 706(2).

## III.   Analysis

Plaintiff argues the VA's decision to terminate his employment should be reversed for three principal reasons. First, Cook argues his due process rights were violated. (Cook Br. #15, p. 5-10). Second, Cook argues the DAB's findings are not supported by substantial evidence. (Cook Br. #15, p. 10-13). Third, Cook argues the VA's penalty was excessive because of the evidence and mitigating factors.

### A. Due Process

Cook argues that the DAB must be reversed because Cook's due process rights were violated for four reasons. (Cook Br. #15, p. 5-10). First, Cook argues that his due process rights were violated because the AIB relied on Patient A's unreliable statements. (Cook Br. #15, p. 6). Second, Cook argues that his due process rights were violated because the AIB relied on Patient A's hearsay statements. (Cook Br. #15, p. 6). Third, Cook argues his due process rights were violated because he was not able to cross examine

Patient A or Elizbeth McGarry.[4] (Cook Br. #15, p. 7). Fourth, Cook argues his due process rights were violated because the DAB improperly reviewed Patient A's YouTube video in advance of the hearing. (Cook Br. #15, p. 10).

First, Cook argues that his due process rights were violated because Patient A's statements were false. (Cook Br. #15, p. 6). The Court acknowledges that Patient A provided a disputed timeframe of certain events.[5] However, Patient A's disputed timeframe is immaterial because the parties agree on the essential facts. Specifically, Cook testified or acknowledged that: (1) he saw Patient A professionally in January 2017 (R. 374-75.); (2) he had sexual intercourse with Patient A on September 11, 2017, or September 12, 2017 (R. 487.); (3) he saw Patient A professionally on September 13, 2017 (R. 488.); (4) he continued to have a personal relationship with Patient A until September 23, 2017 (R. 505.); (5) he refilled Patient A's prescriptions and gave her medical advice through Facebook Messenger from October 2017 until May 2018 (R. 516, R. 688-691.); (6) he contacted Patient A about the investigation on September 20, 2018, and told her she was ruining his life. (R. 492, 386.); (VA Br. #20, p. 7-9.) Moreover, the parties (i.e. Cook and the VA) agree on all of these essential facts. Nothing during the DAB process violated Cook's due process rights.

Second, there was nothing inappropriate about DAB's reliance on Patient A's statements because administrative agencies are not bound by hearsay rules or other conventional rules of evidence. *Niam v. Ashcroft*, 354 F.3d 652, 659 (7th Cir. 2004) ("[A]dministrative agencies are not bound by the hearsay rule or any other of the

---

[4] Elizabeth McGarry is a VA Social Worker. In September 2018, Patient A informed Ms. McGarry about her relationship with Cook. (Cook Br. #15, p. 3). Ms. McGarry provided testimony to the Administrative Investigative Board. (VA Br. #20, p. 4). Ms. McGarry did not testify at the hearing in front of the Disciplinary Appeals Board. (Cook Br. #15, p. 4).

[5] Patient A told Patient Advocate Theresa Seymour and Elizabeth McGarry that she had sex with Cook about a week after her appointment on September 13, 2017. (R. 90.); (R. 118.); (Cook Br. #15, p. 10). In contrast, Cook alleges that he had sex with Patient A on September 11, 2017 or September 12, 2017. (Cook Br. #15, p. 10). The AIB did not resolve this factual dispute, and the AIB concluded that Cook had an inappropriate relationship with Patient A. (R. 100.) During the litigation in front of the District Court, the VA adopted Cook's timeline of events in their brief. (VA Br. #20, p. 1-2.) For the purposes of this litigation, the Court will also adopt Cook's timeline of these events.

conventional rules of evidence, but only by the looser standard of due process of law."). "Although the hearsay rule does not apply to administrative proceedings . . . the Fifth Amendment's guarantee of a full and fair hearing limits admissibility of evidence." *Rosendo-Ramirez v. I.N.S.*, 32 F.3d 1085, 1088 (7th Cir. 1994). Hearsay evidence "need only bear satisfactory indicia of reliability, and can constitute substantial evidence if reliable and trustworthy." *Crawford v. U.S. Dept. of Agriculture*, 50 F.3d 46, 49 (D.C. Cir. 1995). Here, the Court concludes that Patient A's accusation has an indicia of reliability because the accused party, Dr. Cook, confirmed *all* material elements of her allegations. Therefore, the DAB appropriately relied on Patient A's statements.

Third, Cook argues his due process rights were violated because he was not able to cross examine Patient A or Elizbeth McGarry. (Cook Br. #15, p. 7). The Court disagrees. "[A] party in an administrative discharge hearing does not have an absolute right to cross-examine witnesses." *Kreso v. Shinseki*, 67 F. Supp. 3d 1235, 1252 (D. Col. Sept. 9, 2015) (citing *McClure v. Indep. Sch. Dist. No. 16*, 228 F.3d 1205, 1211-12 (10th Cir. 2000)). "[W]hether the Due Process Clause requires that the terminated employee be offered the right to cross-examine or confront witnesses depends upon the significance and nature of the factual disputes at issue." *Kreso v. Shinseki*, 67 F.Supp.3d 1235, 1252 (D. Col. Sept. 9, 2015); *see also Espinoza v. I.N.S.*, 45 F.2d 308, 311 (7th Cir. 1995) ("Aliens in deportation proceedings may not assert a cross-examination right to prevent the government from establishing uncontested facts."). The Court concludes Cook's due process rights were not violated by his inability to cross examine Patient A or Ms. McGarry. He was not entitled to cross examine the witnesses in an administrative hearing, and the parties do not have a significant factual dispute.

Fourth, Cook argues his due process rights were violated because the DAB reviewed Patient A's YouTube video before the hearing. Cook reasons the YouTube video does not contain his perspective of events, and the YouTube video caused the DAB to formulate opinions about Cook before he was able to be heard in a meaningful way. (Cook Br. #15, p. 10). This argument is underdeveloped and waived because Cook did not provide any legal authority or other justification to support his argument. *Colburn v.*

5

*Trustees of Indiana University*, 973 F.2d 581, 593 (7th Cir. 1992 (stating that a "perfunctory argument" does not preserve a claim and it is not the court's role to scour the record for factual or legal support for a claim). Further, as noted above, the DAB was entitled to consider hearsay evidence, like the YouTube video, during the administrative hearing.

### B. Substantial Evidence

Plaintiff argues the VA's decision should be reversed because the decision was not supported by substantial evidence for four reasons. First, Cook argues Patient A presented false evidence. (Cook Br. #15, p. 11). Second, Cook argues two of the Specifications are not supported by substantial evidence because he did not know Patient A was his patient when he was in a sexual relationship with her. (Cook Br. #15, p. 11). Third, Cook argues the charge that he inappropriately contacted Patient A on September 20, 2018, is not supported by substantial evidence. Fourth, Cook argues Charge Two Specification One for "failure to follow policy" is not supported by substantial evidence because Cook did not initiate the contact through Facebook.

The Court must set aside any agency action "unsupported by substantial evidence." *Doran v. Wilkie*, 768 Fed. App'x 340, 349 (6th Cir. 2019) (citing 38 U.S.C. § 7462(f)(2)). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doran v. Wilkie*, 768 F. App'x 340, 349 (6th Cir. 2019) (citing *Mountain States Contractors, LLC v. Perez*, 825 F.3d 274, 279 (6th Cir. 2016)).

First, Plaintiff argues the charges are not supported by substantial evidence because Patient A presented false evidence. (Cook Br. #15, p. 11). As stated above, the Court acknowledges that Patient A and Cook provided different timelines for their sexual relationship. However, Patient A's disputed timeline is immaterial because the VA and Cook agree on the timeline related to the essential facts. These facts, which are not in dispute, demonstrate substantial evidence in support of the charges against Cook.

Second, Cook argues two of the Specifications are not supported by substantial evidence because he did not know Patient A was his patient when he was in a sexual relationship with her. (Cook Br. #15, p. 11). This argument is not persuasive because the

6

two relevant ethical rules Cook violated do not have "knowledge" as an element to the charge. For Charge 1 Specification 1, Cook is accused of violating VA Employee Conduct and Ethical Standards, Part III, Section A, paragraph 3, which states:

> The employee will not initiate or participate in any relationship with patients which could be harmful to the therapeutic environment for the specific patient or resulting in a non-therapeutic environment for other veterans in the same area.

(R. 305.) For Charge 1 Specification 2, Cook is accused of violating MCM 05-07 (III)(A), which states:

> Behaviors which could result in abuse, carelessness in rending service, or a violation of instructions will not be tolerated. Specific behaviors referred to include, but are not limited to, emotional involvement with patients, sexual involvement with patients, and financial involvement with patients.

(R. 306.) As stated above, these two rules do not require that the doctor have "knowledge" that the patient was his patient during the inappropriate relationship. Additionally, the undisputed facts provide substantial evidence that Cook violated both provisions and at least should have known that Patient A was his patient at the time the relationship began and certainly knew when the relationship continued from September 13 to September 23.[6] Specifically, there is substantial evidence Cook violated these two rules because he had sexual intercourse with one of his patients, and he had a non-clinical relationship with his patient from September 11, 2017, until September 23, 2017.

Third, Plaintiff argues Charge 1 Specification 3 is not supported by substantial evidence because the VA did not provide a citation to a specific rule that Cook violated. The Court notes that Cook did not cite any legal authority in support of this argument, so it's unclear what the legal basis would be. Nevertheless, the VA's lack of citation to a

---

[6] Specifically, Cook testified: (1) he saw Patient A clinically in January 2017 (R. 374-75.); (2) he had sexual intercourse with Patient A on September 11, 2017, or September 12, 2017 (R. 487.); (3) he saw Patient A clinically on September 13, 2017 (R. 488.); (4) he continued to have a non-clinical relationship with Patient A until September 23, 2017 (R. 505.)

policy violation for Charge 1 Specification 3 is immaterial. The VA's notice was adequate under 38 U.S.C. § 7462 (b)(1)(A). This statute states that when charges are brought against a VA physician, the physician is entitled to:

> Advance written notice from the Under Secretary for Health or other charging official specifically stating the basis for each charge, the adverse actions that could be taken if the charges are sustained, a statement of any specific law, regulation, policy, procedure, practice, or other specific instruction that has been violated with respect to each charge[.]

38 U.S.C. § 7462 (b)(1)(A).[7]

In *Doran v. Wilkie*, Dr. Doran was a VA physician terminated after an internal investigation concluded that her treatment of several patients failed to meet the standard of care. *Doran v. Wilkie*, 768 Fed. App'x 340, 342-43 (7th Cir. 2019). Dr. Doran argued the VA failed to give her adequate notice of the charges against her because the VA failed to provide a citation to the rule she violated. *Doran*, 768 Fed. App'x at 354. The Sixth Circuit disagreed, and held:

> The Notice provided Dr. Doran with adequate notice of the charges against her. The Notice included the specific dates, patients, and procedures that gave rise to the charges, identifies persons who witnessed the allegedly inappropriate conduct, and clearly set forth the basis for the charge.

*Id.* at 354. The Sixth Circuit also noted that a citation to a law, regulation, policy, or procedure was only required by the VA Handbook "if applicable." *Id.* 354. The Sixth Circuit also noted that Dr. Doran was charged with violating a standard of care, and the VA did not err by failing to "state a *specific* standard of care." *Id.* at 354 (emphasis in original).

Here, the VA gave Cook adequate notice for Charge 1 Specification 3 for Inappropriate Contact. (R. 306.) Specifically, Cook was notified that he contacted Patient A after he learned about the investigation on September 20, 2018, at approximately 7:56 PM through a voice message and Facebook Messenger. (R. 306.) The VA also told Cook

---

[7] The Court notes that this statute *does not* require a citation to a law, regulation, policy, procedure, practice, or instruction for each Specification.

that Patient A was crying when she notified the VA of his contact. The Court finds that the VA provided Cook with adequate notice of Charge 1 Specification 3 under 38 U.S.C. § 7462 (b)(1)(A). Moreover, there is substantial evidence to support Charge 1 Specification 3. Indeed, Cook admitted to these allegations.

Fourth, Cook argues Charge 2 Specification 1 is not supported by substantial evidence because Cook did not initiate the contact through Facebook, and he did not communicate Patient A's confidential information through Facebook. (Cook Br. #15 p. 13). For Charge 2 Specification 1 the cited rule states:

> I will protect VA sensitive information from unauthorized disclosure, use, modification, or destruction *and will use encryption products approved and provided by VA to protect sensitive data.* I will only provide access to sensitive information to those who have a need-to-know for their professional duties, including only posting sensitive information to web-based collaboration tools restricted to those who have a need-to-know and when proper safeguards are in place for sensitive information.

(R. 307.) (emphasis added). Here, the undisputed facts establish that Cook received requests from Patient A for medication refills and medical advice via Facebook, and he responded to these requests on numerous occasions using the same means of communication. (R. 361-62.); (R. 520-21.); (R. 585.) Specifically, the record shows that Cook refilled the prescriptions for Prozac and offered medical advice for Patient A's flu and poison sumac after Patient A messaged him through Facebook. (R. 688-691.) The VA concluded that Cook violated this rule and noted the VA-employee handbook requires the use of encryption software to protect the VA's patient's sensitive information. (R. 307.)

Cook argues the VA lacks substantial evidence for this charge because he did not initiate contact on any occasion over Facebook. Charge 2 Specification 1 does not require that Cook *initiate* the contact over Facebook. Moreover, Cook implicitly encouraged Patient A to contact him through Facebook because he continued to offer medical advice and refill prescriptions through Facebook from October 2017 until May 2018. (R. 516, R. 688-691.) Lastly, there is substantial evidence to support Charge 2 Specification 1 because:

(1) Cook did not protect Patient A's information; (2) Facebook is not an encryption application that was approved by the VA; and (3) Cook did not ensure safeguards were in place to protect Patient A's sensitive information.

### C. Excessive Punishment

Finally, Cook argues the decision to remove him from federal service was excessive given the evidence presented during the AIB investigation. (Cook Br. #15, p. 14). Cook argues that the punishment was excessive and an abuse of discretion because: (1) there is no evidence that Cook knowingly contacted Patient A to initiate a sexual relationship with knowledge she was a patient; (2) Cook terminated the sexual relationship as soon as he discovered Patient A was his patient; (3) there have never been other allegations of sexual misconduct against Cook during his employment at the VA; and (4) Cook admitted that he should have proactively reassigned Patient A to another doctor.

An agency's penalty determination is reviewed under an abuse of discretion standard. *Schuck v. Frank*, 27 F.3d 194, 197 (6th Cir. 1994); *Parker v. U.S. Postal Service*, 819 F.2d 1113, 1116 (Fed. Cir. 1987). "[D]eference is given to the agency's judgment unless the penalty exceeds the range of permissible punishment specified by statute or regulation, or unless the penalty is so harsh and unconscionably disproportionate to the offense that it amounts to an abuse of discretion." *Parker v. U.S. Postal Service*, 819 F.2d 1113, 1116 (Fed. Cir. 1987); *see also Randall v. Department of Justice*, 652 Fed. App'x 929, 931 (Fed. Cir. 2016).

Here, the Court finds that the punishment was not "so harsh and unconscionably disproportionate to the offense that it amounts to an abuse of discretion." The Court reasons that Cook violated the VA's policies by treating a patient he had sexual intercourse with one or two days prior. Additionally, the Court notes that Cook's ethical violation is very serious, and he likely caused emotional distress to a patient that already suffers from PTSD relating to a history of spousal abuse. (R. 696.) Moreover, Cook's behavior has cause reputational damage to the VA. Lastly, the Court notes that Cook has been disciplined and suspended by the VA for failure to follow the VA's policy and

supervisory instruction in the past. (R. 263-64.) Based on these facts, the Court concludes that the VA did not abuse its discretion by terminating Cook.[8]

### IV.   Conclusion

In summary, the Court has reviewed all of Plaintiff's arguments and concludes that the DAB properly applied the law and supported its decision with substantial evidence. For these reasons, the Court recommends Plaintiff's Complaint for Judicial Review (#15) be DENIED, Defendants' Motion for Affirmance (#20) be GRANTED, and Plaintiff's termination be affirmed. The parties are advised that any objection to this recommendation must be filed in writing with the clerk within 14 days after being served with a copy of this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1). Failure to object will constitute a waiver of objections on appeal.

ENTERED this 12th day of November, 2020.

s/ERIC I. LONG
UNITED STATES MAGISTRATE JUDGE

---

[8] The Court reviewed the twelve *Douglas* factors when considering whether the VA abused its discretion. *Douglas v. Veteran Admin.*, 5 M.S.P.R. 280, 332 (M.S.P.B 1981) (stating twelve factors that may be relevant in considering the appropriateness of an agency's penalty).